S. Samuel Di Falco, S.
The executors have filed an intermediate accounting of their proceedings. The petition which seeks the judicial settlement of that account also requests a determination of five matters at issue between the executors and the residuary legatees or among the legatees themselves. The testator had bequeathed his residuary estate in equal shares to a daughter and two sons. All of them have filed objections to the account. The greater part of these objections are not directed to the acts and transactions of the executors, but rather to claims and counterclaims of the residuary legatees against the estate or among themselves. Inasmuch as the objections include all of the questions raised in the petition of the executors, the court will consider first the objections and will then take up the request of the executors for fixation of the reasonable compensation of their attorneys and the firm of accountants who rendered services to the estate.
Objections of Denise F. Joselson. The first objection is to the rejection of a claim presented by the objectant in the sum of $45,310.78. This claim, according to the objections, arises from “ certain transactions had by the decedent with the objector ”, as a result of which the decedent became indebted to his daughter in the sum demanded. The precise nature of these transactions is never fully revealed in this record. The objectant has not attempted to prove directly that the decedent borrowed money from her or expressly promised to pay her any sums. Her proof consists of an attempt to show that the decedent’s books of account charged her twice with three different items and if the “ duplications ” — as she terms them — are eliminated, she would wind up being a creditor of the estate.
In their petition, the executors had asserted a claim against the objectant in the sum of $437.62. That claim was based *766 upon reports furnished the executors by the accountants who had been employed by the decedent. The executors withdrew that claim at the hearing. The decedent, a diamond merchant, had been in partnership with his brother up to a few months before his death. The partnership books showed certain debits and credits to objectant. The partnership had been liquidated and the objectant’s accounts were in balance. The decedent’s own books also showed debits and credits to his daughter. The accountants had reported to the executors a debit balance of $437.62 against the objectant. The objectant attempts to consolidate the two sets of books and to concentrate on three items, one for $39,000, one for $3,000, and one for $5,310.78. She argues that each item was properly charged against her account but she contends that each of these three items was in fact charged txvice against her. She seeks to have the books corrected and to have the total of the three items awarded her.
The executors deny that the items are duplicate and improper charges. The accountants whom she called as witnesses also denied that the charges were improper. A great part of the hearing was devoted to an examination of the books and transcripts from them and a discussion as to the charges. The basic question, however, is not whether the decedent’s books and the partnership books can be consolidated in one account, nor whether the decedent kept proper books of account. The question is whether the decedent had borrowed money from the objectant and failed to repay it. That is the only possible basis of objectant’s claim. It was conceded at the hearing that certain brokerage accounts were in the name of the objectant, but it was never conceded and never established that she was the true owner of those accounts. Transfers between the brokerage accounts and the partnership or the decedent were set up as advances by the objectant and as repayments. The objectant never attempted to show that in fact she advanced moneys that were never repaid. She does not venture to say whether it was the partnership that was indebted to her, or the decedent. The theme of her argument, repeated without variation, is that the decedent’s personal books charged the three items against her, and that the partnership books also charged the same three items against her. She did not take the stand to testify. She conceded that the three items were paid to her once. She maintains that there is no proof that she was paid twice and that every reasonable inference from the evidence in the record is that she was not. She docs not contend that her father attempted to cheat her. She appears to regard the alleged duplication» as mistakes.
*767 The objeetant has failed to sustain the burden of proving hor claim. There is no basis for the court to consolidate two separate accounts as if they were one set of books. It is of no consequence that the executors’ claim of $437.62 was based upon consolidated accounts. They apparently could not prove the claim. They abandoned it. The decedent’s accounts undoubtedly reflect his view of these transactions. On the basis of those accounts, he owed his daughter nothing. Perhaps he intended to keep the accounts in such a way as to make it clear that whatever form the appearances might otherwise assume, the true state of affairs balanced out in the way his accounts indicate. But we need not speculate as to whether the funds were in fact and in truth those of the objeetant or were for the use of the decedent as be saw fit. The objeetant is bound to establish her claim by clear and convincing evidence. She has failed to do so. The first objection is overruled and her claim is dismissed.
The second objection is academic in view of the executors’ withdrawal of the claim of $437.62. The third objection has been withdrawn.
The fourth objection has been withdrawn against the executors. The objeetant, however, claims that one or both of her brothers converted to his or their own use diamonds owned by the decedent and valued at approximately $40,000. It is certain that there has been a strange and unexplained disappearance of a quantity of diamonds. The proof in this record, however, docs not justify the finding that either one of the brothers can be charged with converting any specific quantity of diamonds. The fourth objection must be overruled.
The fifth, sixth, seventh and eighth objections have been withdrawn either on the hearing or in her brief. The ninth and tenth objections will be disposed of by the fixation of fees.
The first supplemental objection is to the charge of approximately $12,600 against the objectant’s share of the estate, whereas, it is alleged, half of that sum should have been charged against each of the other residuary legatees. Here is another instance where the residuary legatees appear very hesitant in offering to shed any real light on the transaction. The executors charged that sum against the objeetant because, as their attorney relates it, the two brothers claimed that a brokerage account in the name of the objeetant actually belonged to the estate, the claim was to be compromised and adjusted by the three legatees, and the objeetant required an advance from the estate in order to make the agreed payments to her brothers. No one of the executors has taken the stand to testify as to the settlement. The objeetant did not offer herself as a witness. *768 One brother refused to say that there had been any settlement of any such issue. His testimony was that he received checks from his sister totaling $6,300, and he understood these checks “ to be money that [he] received on account of moneys that [he was] entitled to from [his] father’s estate.” The other brother did testify that he understood the payment of $6,300 to be a settlement growing out of .the brokerage account, but he admitted that he never had a private conversation with his sister in relation to such settlement. He said that there were several conversations in the office of the executors respecting the settlement, but he was unable to show that his sister manifested any clear understanding of the negotiations.
The executors dealt with the objectant’s husband in maldng the payment to her and in respect of her issuing checks to her brothers. Her husband understood that this method of distribution was used in order to take certain “ pressure off” at that time, and that everything would be straightened out at a later date. He was told that there was some tax advantage in the method then proposed. His testimony is that he accepted the executors’ suggestion and so advised his wife.
Independently of the testimony, there is no justification for finding that a compromise had in fact been made with respect to the brokerage account at that time, because the brokerage account was not released to the objectant for a long time thereafter. It is certain that out of $15,000 distributed to the objectant, she paid $6,300 to each of the other two legatees, that she did this after a conference between her husband and the attorney for the executors in which a compromise of conflicting claims was never discussed, and from which the husband could well have misunderstood the whole purport of the transaction. There was basis for his believing that the distribution was only temporary and subject to adjustment. On this state of the record, the third objection must be sustained. The executors must amend the account to eliminate the charge of $12,600 against the objectant’s share and to charge $6,300 against the other two shares.
The second supplemental objection is overruled. It is not disputed that the objectant consented to payment by the executors of the sum of $3,850 to Marcel Freudmann for traveling expenses. He testified that the sum was used for that purpose and no other evidence was produced. The third, fourth and fifth supplemental objections have been withdrawn.
Objections of Marcel T. Freudmann. The first objection is directed to the request of the executors for instructions with *769 respect to interest to be charged against this objectant on account of money owed' to the estate.
At the time of the decedent’s death, the objectant eoncededly owed his father $107,637.98. It would appear from the concession of counsel that the loan did not carry interest during the lifetime of the decedent. In addition, the decedent had guaranteed certain loans made by a bank to the objectant, and had pledged assets as security for the loan. The decedent died on June 24, 1952. In January, 1953 the loan was paid by the estate through liquidation of securities pledged with the bank. The total amount paid on the loan was $99,750. This sum has been treated as advance payments on account of objectant’s legacy.
The objectant contends that the loans made by his father to him do not carry any interest and that, as a residuary legatee, he is entitled to a full equal one-third share of all income earned by the residuary estate. The other residuary legatees argue that the income earned by the residuary estate should be equitably allocated, taking into account the objectant’s reduced share in the residue.
The right of the executors to retain a sufficient part of the objectant’s share to satisfy his debt, is not disputed. That right has long been recognized, and is said to be equitable in nature. (4 Page, Wills, § 1569.) It has been held that a debt due the testator from the legatee is a satisfaction pro tanto of the legacy, and that, where interest is payable on the debt, it is payable only to the date of the testator’s death. (Dickerson v. Stokes, 4 Dem. 219; Matter of Foster, 15 Misc. 175, 178; 34 C. J. S. Executors and Administrators, p. 393.) Other decisions have held that interest may be payable after the testator’s death and up to the time of settlement. (Akerman v. Akerman, [1891] 3 Oh. 212, 221; Verplanck v. De Went, 10 Hun 611; see, also, 1 A. L. E. 991,1011-1012.) However, the right of retainer being equitable in nature, the relief in a particular case should be shaped by equitable considerations. The loan made by the decedent to his son did not carry interest. The objectant’s share of the residue is expected to exceed all of his obligations to the estate. The suggestion of the other residuary legatees for a prorata allocation of estate income is, under all of the circumstances of this case, equitable to all parties.
The objectant’s situation is in effect somewhat similar to that of one who has received payments on his share which are in excess of the payments made to those having like shares. It has aptly been said: “ It is but fair in making final payment *770 to the legatee or distributee to effect an adjustment of interest so that the person who has not drawn any part of his interest in the estate may receive additional compensation for having allowed his money to remain in the estate. In large estates where there have been numerous advances, the fiduciaries must consider average earnings, and the dollar day to effect an adjustment of interests.” (Dodge & Sullivan, Estate Administration and Accounting, p. 345.)
The executors are, therefore, directed to allocate the income ratably among the residuary legatees in accordance with their actual interests in the estate. As was said long ago in respect of a somewhat similar situation: u If a testator leave 1,000£ to A; and A owed the testator 100£, the legacy is discharged by paying 900£ to the legatee or his assigns; in like manner if an equity exists at the death of the testator between him and one of his residuary legatees, the share of that person in the residue is only so much as remains after satisfying what is due to the testator’s estate.” (Wittes v. Greenhill, 29 Beav. 376, 382.) As soon as the executors are able to determine with reasonable certainty the value of the residuary interests, the share of the objectant will be reduced, as of the date of the testator’s death, by the amount owed by the objectant to the testator. Income will be apportioned among them in accordance with their respective interests up to the time when further distributions of principal to one or the other will modify the proportionate interests. The payments on the loan by the bank to the objectant are properly treated as further advance distributions of principal to the objectant, made on the date that the executors paid the bank. This ruling disposes of the first objection.
Such an allocation of the income is in no way violative or contrary to the terms of section 17-b of the Personal Property Law. That statute directs payment of the income * ‘ ratably ’ ’ to the residuary legatees. The method of payment herein directed is ratable and equitable.
The eleventh objection is directed to the sum of $92,566 reported in the account as having been collected by the executors from the estate of Nora Freudmann, who was the testator’s wife. She had predeceased the testator. The objectant contends that the executors under the wife’s will had no authority to pay that sum to this estate, and that the money is not properly an asset of this estate. The objectant is one of the three executors under his mother’s will. He says that the transfer was made without his consent, and that one of the executors of that estate, who is also one of the executors under the will of the testator herein, made the transfer.
*771 The estate of Nora Freudmann is not now before the court. It does not seem to be disputed in the pending proceeding that the testator had a limited power of appointment under the will of his wife, and that he exercised that power in the residuary clause of his will. Ordinarily, the appointed property passes directly from the donor’s estate to the appointees. However, whether or not the appointed property should be paid to the appointees or to the fiduciaries under the donee’s will are questions that must be decided by the court having jurisdiction over the final proceedings in the donor’s estate. Such questions can be decided only in an appropriate proceeding in the donor’s estate, on notice to all persons having any interest therein, and after giving them fair opportunity to be heard. The court cannot in this proceeding make determinations with respect to the transactions of fiduciaries in another estate. If the transfer has been illegally and improperly made and if loss to the wife’s estate or to the beneficiaries therein should result, the executor or executors under the wife’s will are responsible. However, so that there will be no irreparable loss to the wife’s estate under any eventuality, the executors herein should withhold distribution of this sum until a proper determination is made in the wife’s estate as to the persons entitled to the fund. The eleventh objection is, therefore, dismissed without prejudice.
The second, third, fourth, twelfth and fifteenth objections relate to fees and will disposed of by the court’s decision on the executors’ request for allowance of such fees. The seventh objection relates to computation of commissions and will be reserved for determination upon the settlement of the decree. The fifth, sixth, eighth, ninth, tenth, thirteenth and fourteenth objections and all of the objections numbered sixteenth to twenty-second inclusive have been withdrawn.
Objections of Felix Freudmann. The first objection is to the request of the executors to determine that the objectant is indebted to the estate in the sum of $6,171.30. The executors have failed to prove that the objectant was indebted to the decedent and the objection is, therefore, sustained. The second and third objections relate to fees and will be disposed of by the court’s ruling hereinafter. The fourth, fifth, sixth, eighth, ninth, tenth, eleventh and twelfth objections have been withdrawn. The seventh objection relates to the receipt of the funds from the executors under the will of the testator’s wife, and it is dismissed without prejudice for the reasons stated with respect to the similar objection of Marcel Freudmann.
The total reasonable compensation of all of the attorneys for the executors is fixed in the sum of $40,000. There is to be *772 deducted from this total sum any payments on account heretofore made to the attorneys. The fixation of the reasonable compensation of the attorneys disposes of the various objections raised to the amount requested in the petition and supplemental affidavit.
The argument of counsel raises the question as to the necessity for the employment of accountants. It is asserted that such employment was necessary and that the legatees had consented to it. Both assertions appear to be denied by the legatees. The affidavit submitted by the accountants does not clearly establish the necessity for all of the services claimed to have been rendered by them. The court will, therefore, direct a further hearing on this limited issue at a date to be hereafter fixed.
After determination of the remaining issue herein, a decree may be submitted on notice settling the account accordingly.